**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

| | |
|---|---|
| CHESACO MOTORS, INC. and ) | |
| JIFFY HITCH TRAILER AND ) | |
| SUPPLY, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | NO. 3:09-cv-383 |
| ) | |
| GULF STREAM COACH, INC., ) | |
| ) | |
| Defendant. ) | |

## AMENDED OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment, filed by Defendant, Gulf Stream Coach, Inc., on October 19, 2012 (DE #59). For the reasons set forth below, the motion is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as to Counts 1, 2, 4-8, 10-14, 16-20, 22-26, 28-32, 34-38, 40-44, 46-50, 52-56, 58-62, 64-68, 70-74, 76-80, 82-86, 88-92, 94-98, 100-102, as Chesaco has stipulated that summary judgment is proper on these counts, and the Clerk is **ORDERED** to **DISMISS THESE COUNTS WITH PREJUDICE**. The motion is **DENIED** as to Counts 3, 9, 15, 21, 27, 33, 39, 45, 51, 57, 63, 69, 75, 81, 87, 93, and 99, and the case **REMAINS PENDING** on these counts. This amended order simply fixes a typographical error in the previous opinion and order, and now correctly states in the last paragraph that Chesaco has stipulated that summary judgment is proper on the enumerated counts.

BACKGROUND

This dispute arises from the sale of 17 recreational vehicles ("RVs") to Plaintiffs, Chesaco Motors, Inc. and Jiffy Hitch Trailer and Supply (collectively "Chesaco"), who was a dealer of RVs. Defendant, Gulf Stream Coach, Inc. ("Gulf Stream") manufactured the RVs and sold them to Chesaco. 17 Gulf Stream RVs are at issue, each of which Chesaco claims had numerous defects that required repairs by Chesaco.

Gulf Stream filed the instant Motion for Summary Judgment on October 19, 2012, moving for summary judgment "on the Plaintiff's complaint." (DE #59.) Chesaco filed a brief in response on February 21, 2013. (DE #70.) Gulf Stream then filed a reply on February 28, 2013. (DE #71.) As such, the motion is fully briefed and ready for adjudication. Additionally, at the request of Chesaco, the Court heard oral argument on the issue of summary judgment on March 13, 2013, at which both parties were in attendance and presented legal argument to this Court. During oral argument, Chesaco stated that it is now only advancing its claims for breach of implied warranty of merchantability, stipulating that summary judgment is proper on the other counts. (*See also* Plaintiff's proposed order, DE # 74.)

Undisputed Facts

Chesaco was a Gulf Stream dealer from 2005 to 2009. (Shapiro Decl. ¶ 3.) During that time period, Chesaco purchased the 17 RVs at issue from Gulf Stream. (Suddon Aff., ¶¶ 15, 22, 26, 30, 34, 38, 41, 44, 48, 52, 56, 60, 64, 68, 72, 76, 80.) Gulf Stream claims that as a matter of course, it does not sell to a dealer unless a signed and approved Dealer-Manufacturer Agreement ("DMA") is on file with Gulf Stream. (Suddon Dep., p. 26.) However, Gulf Stream has not located any signed copies of the DMAs that were allegedly approved for Chesaco. (Ganiere Dep., pp. 20-21, 27-28.) Chesaco has found no records that indicate it ever signed a DMA with Gulf Stream. (Shapiro Decl., ¶ 4.) Additionally, Shapiro, the owner and general manager of Chesaco and Jiffy Hitch in 2005 and 2006 when it decided to purchase RVs from Gulf Stream, has no recollection of ever signing such documents. *Id.*

Gulf Stream manufactured and shipped the purchased RVs to Chesaco. Gulf Stream claims that during the manufacturing of its RVs, it conducts a number of quality inspections of the vehicles. (Anthony Suddon Aff., p. 18.) Nevertheless, each of the 17 RVs had numerous defects that required repairs by Chesaco. (Phillips Decl., ¶ 4.) Chesaco submitted over $40,000 in warranty claims on the 17 RVs, which required an excessive amount of repairs. (Phillips Decl., ¶ 4, Phillips Dep., pp. 68-71.)

3

Chesaco repaired the RV problems after submitting claims to Gulf Stream. (Phillips Decl., ¶ 5.) Although Gulf Stream reimbursed Chesaco for some of the repairs, Chesaco claims it incurred unreimbursed, out-of-pocket expenses in excess of $17,000. *Id.* However, Gulf Stream claims that each of the warranty claims submitted to it was processed, administered, adjusted and paid or declined in accordance with Gulf Stream's Warranty Policy and Procedure and Flat Rate Manual and the Gulf Stream limited warranty issued to the consumers purchasing the respective RVs. (Suddon Aff., ¶ 88.)

Additionally, Chesaco had problems working with Gulf Stream to get the RVs fixed, including Gulf Stream failed to ship required parts, refused to authorize repairs, and delayed approving claims and shipping parts that at times lasted several months. (Phillips Decl., ¶ 6.) Due to the RV defects and delays in repairs, many of the RVs sat on Chesaco's lot until after the next model year RV was released. (Shapiro Decl., ¶ 6.) When a new model year is released, the previous model year is worth less and results in a smaller profit margin for Chesaco. *Id.*

Chesaco uses floor-plan financing to purchase RVs. Floor-plan financing is a revolving line of credit that allows Chesaco to obtain financing for the RVs it purchases from RV manufacturers like Gulf Stream. (Shapiro Decl., ¶ 7.) Loans are made against a specific RV. When each RV is sold by Chesaco, the loan advance

against that RV is paid. The longer an RV sits in Chesaco's inventory, the greater the amount of finance charges that must be paid by Chesaco. *Id.* Conversely, the quicker Chesaco can sell an RV to the customer, the less floor-plan financing interest that the dealer will incur for that RV. *Id.* Chesaco claims due to the defects in the 17 RVs, and length of time to get them repaired, it took a longer time than usual to sell the RVs, and they were sold at a lower price, resulting in less profits to Chesaco. (Shapiro Decl., ¶ 5.) Chesaco seeks to recover lost profits of $200,235 and floor-plan interest incurred in the amount of $82,492. (Shapiro Decl., ¶ 9.)

DISCUSSION

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* To determine whether a

5

genuine issue of material fact exists, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). A party opposing a properly supported summary judgment motion may not rely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). If the non-moving party fails to establish the existence of an essential element on which he or she bears the burden of proof at trial, summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

Breach of the Implied Warranty of Merchantability

Gulf Stream presented three main arguments to this Court during the oral hearing on the motion for summary judgment. First, it argued that Chesaco did not demonstrate with sufficient detail the factual dispute. Second, Gulf Stream argued Chesaco is not entitled to floor plan interest as a matter of law. Third, Gulf Stream contended that Chesaco is not entitled to lost profits as a matter of law. In turn, Chesaco responded that genuine issues of material fact preclude summary judgment on Plaintiffs' claims for breach of the implied warranty of merchantability on the 17 RVs at

issue in Plaintiffs' complaint, and that the law does provide an avenue for recovery for floor plan interest and lost profits. The parties agree that RVs are "goods" and the substantive law applicable to this action is Article 2 of the Indiana Uniform Commercial Code, Ind. Code § 26-1-2-101, *et seq.*

The implied warranty of merchantability provides a warranty that goods will be merchantable, and it is implied in a contract for sale if the seller is a merchant with respect to goods of that kind. *Irmscher Suppliers, Inc. v. Schuler*, 909 N.E.2d 1040, 1048 (Ind. Ct. App. 2009). Here, there is no dispute that Gulf Stream is a merchant of RVs. Indiana Code § 26-1-2-314(2) requires that, for the goods to be merchantable, they must be fit for the ordinary purposes for which such goods are used. The "implied warranty of merchantability is imposed by operation of law for the protection of the buyer and must be liberally construed in favor of the buyer." *Frantz v. Cantrell*, 711 N.E.2d 856, 859 (Ind. Ct. App. 1999) (citation omitted).

Specificity of the Factual Dispute

Gulf Stream's first argument is disposed of easily. The declaration of Steven Phillips, who handled warranty repairs for Chesaco, attested to the amount submitted in warranties, the unreimbursed expenses incurred, the delay incurred, and the

7

attached portion of the complaint specifically details each defect in each RV. (Phillips Decl., DE #70-2, Compl. ¶ 9.) Additionally, Steve Shapiro, owner of Chesaco, attested to Chesaco's use of floor plan financing, the floor plan interest incurred, and the lost profits it seeks to recover. (Shapiro Decl., DE #70-1.) This is sufficient detail to create a factual dispute as to whether the RVs at issue were merchantable, or fit for the ordinary purposes for which such goods are used. *Irmscher,* 909 N.E.2d at 1048; *Jones v. Abriani*, 350 N.E.2d 635, 645 (Ind. Ct. App. 1976) (merchantable if it "conform[s] to ordinary standards and . . . [is] of the same average grade, quality and value as similar goods sold under similar circumstances.").[1]

Floor Plan Interest

Next, Gulf Stream argues that floor plan interest cannot be recovered by Chesaco as a matter of law. The Court disagrees. One of the remedial goals of the UCC is that the aggrieved party "be put in as good a position as if the other party had fully performed, but not in a better position." *Gen. Motors Corp. v. Sheets*, 818 N.E.2d 49, 54 (Ind. Ct. App. 2004). Indiana Code § 26-1-2-714 governs damages where the buyer has not rejected the goods

---

[1] Chesaco also argues that Gulf Stream waived this argument by failing to raise it in the initial memorandum in support of summary judgment. The Court does not reach the issue of waiver, as the argument fails on the merits.

or revoked acceptance and provides:

> (1) Where the buyer has accepted goods and given notification (IC 26-1-2-607(3)), he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.
>
> (2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a difference amount.
>
> (3) In a proper case any incidental and consequential damages under IC 26-1-2-715 may also be recovered.

Ind. Code § 26-1-2-714.

Gulf Stream argues that because Chesaco failed to give the requisite notice required by Section 26-1-2-607(3), "Plaintiffs' sole remedy, therefore, is Ind. 26-1-2-714(2) for supposed breach of warranty." (DE #62, p. 7.) Section 26-1-2-607(3) provides that where tender has been accepted, "the buyer must, within a reasonable time after he discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy." Ind. Code § 26-1-2-607(3)(a). In another recent case involving Gulf Stream, the Seventh Circuit ruled that the notice requirement is satisfied if the seller has actual notice that the goods are nonconforming. *Anderson v. Gulf Stream Coach, Inc.*, 662 F.3d 775, 781-82 (7th Cir. 2011) (citing *Agrarian Grain Co., Inc. v. Meeker*,

526 N.E.2d 1189, 1193 (Ind. Ct. App. 1988)). In *Anderson*, the Court found the warranty claims by the dealer to Gulf Stream provided sufficient notice to satisfy § 2-607(3). Similarly, because Anthony Suddon acknowledged in his affidavit that Chesaco made at least one warranty claim on each of the 17 RVs (Suddon Aff., DE #63), and Chesaco provided similar evidence by way of Phillips' affidavit that it promptly notified Gulf Stream of all the alleged defects (Phillips Decl. ¶¶ 8-9), Chesaco did timely provide notice of the breach.

Section 26-1-2-714(3) provides that "in a proper case any incidental and consequential damages under IC 26-1-2-715 may also be recovered." The Comment to this section indicates that the damages available under section (2) "[are] not intended as an exclusive measure," but that the statute was truly intended to also provide for "incidental and consequential damages referred to in subsection (3), *which will usually accompany an action brought under this section.* . . ." Ind. Code § 26-1-2-714 Comment (emphasis added).

Section 2-715(1) specifically provides that incidental damages and consequential damages are recoverable from a seller's breach, including "any loss resulting from general or particular requirements and need of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise." Ind. Code § 26-1-2-715(2)(a).

10

Chesaco cites *Masters Machine Co., Inc. v. Brookfield Athletic Shoe Co., Inc.*, 663 F. Supp. 439, 442 (D. Me. 1987), for the proposition that floor-plan interest is recoverable as incidental damages. There, the court denied a motion for new trial when the jury found that the claimed floor-plan interest expense was incurred by plaintiff, a result of the defendant's breach, and that it was commercially reasonable. *Id.* at 443. Similarly, under the broad definition of damages available under the UCC, this Court will not restrict the alleged incidental/consequential damages of floor plan interest in this case. Whether Gulf Stream's breach of warranty is the proximate cause of Chesaco's damages, and whether they were reasonably foreseeable, are questions left for the fact finder to determine. *Irmscher*, 909 N.E.2d at 1050-51.

Gulf Stream relies upon *Michiana Mack, Inc. v. Allendale Rural Fire Protection District*, 428 N.E.2d 1367 (Ind. Ct. App. 1981), but that case is distinguishable. In *Michiana*, a used fire truck was sold from a dealer to a fire department (or an end user). The dealer sold the truck to the fire department with the intent that the fire department would keep it for long-term use. *Id.* at 1369. The fire department financed the sale of the truck, purchased insurance, kept the truck, and indeed used it. After the sale, the fire truck had overheating problems, and the plaintiff tried to fix it, but failed. The plaintiff did not attempt to rescind the contract or return the truck, but rather sought damages including

11

expenses regarding interest and insurance on the truck. The court denied those damages, ruling, "both incidental and consequential damages must result from the seller's breach. It is upon that language which this decision pivots. The payment of insurance premiums and interest did not result from Michiana's breach." *Id.* at 1372. Here, in contrast, Gulf Stream sold the RVs to Chesaco knowing that Chesaco wanted to sell the RVs to end-users as soon as possible to make a profit. Additionally, Gulf Stream knew that Chesaco was using floor-plan interest financing, and that the longer Chesaco had an RV, the more financing charges it would incur. (Shapiro Decl. ¶ 7.) Thus, here, it is arguable, and indeed a fact finder should be able to determine, whether the additional floor plan interest paid by Chesaco was indeed proximately caused by Gulf Stream's breach.

Lost Profits

Gulf Stream also urges that lost profits are not recoverable in these circumstances as a matter of law. However, as discussed earlier, section 26-1-2-714(3) specifically provides that incidental and consequential damages may be recovered in a proper case. Chesaco cites *Biovail Pharms., Inc. v. Eli Lilly and Co.*, No. 5:01-CV-352-BO(3), 2003 WL 25901513 (E.D.N.C. Feb. 28, 2003) (applying Indiana law), for the proposition that lost profits can be recovered as consequential or direct damages. Indeed, that case

found that under section 26-1-2-715:

> consequential damages resulting from the seller's breach include any loss resulting from general or particular requirements and needs of which the seller, at the time of contracting, had reason to know and which could not reasonably be prevented . . . The Court recognizes that this may include lost profits.

*Id.* at *2 (quoting Ind. Code § 26-1-2-715 and citing *Ubelhack Equipment, Inc. v. Garrett Brothers, Inc.*, 408 N.E.2d 136 (Ind. Ct. App. 1980) (lost profits from inability to sell grain caused by general contractor's failure to complete renovation to grain elevator treated as consequential damages)). In *Biovail*, the pharmaceutical contract at issue had a provision waiving recovery of consequential damages[2], thus the plaintiff sought revery of lost profits as direct damages. The *Biovail* court held that because "given the nature of the contract, lost profits were not only highly probable, but an inevitable consequence of the breach where Lilly no longer supplies [a pharmaceutical drug] to Biovail to re-sell on the market" accordingly, the plaintiff's lost profits were recoverable as direct or general damages and not precluded under the contract. *Biovail*, 2003 WL 25901513, at *3.

Similarly, in this case, as a matter of law, it is possible

---

[2] Here, there is no evidence that Gulf Stream contractually limited Chesaco's remedies. Gulf Stream has presented no signed Dealer-Manufacturer Agreement ("DMA") between it and Chesaco. (Shapiro Decl., ¶ 4.) Even the blank DMA form that Gulf Stream attached to its Motion for Summary Judgment does not contain any limitations on claims or damages. (DE #61, pp. 70-71.)

13

that Chesaco may recover its lost profits. There is evidence that Gulf Stream knew that at the time of sale, that defects and repairs needed to the RVS could reduce the profitability for Chesaco, and that delays in repair could cause Chesaco to have to sell the previous year models at a lower price. (Suddon Dep., pp. 60-61, 131; Shapiro Decl. ¶ 9.) A plaintiff can recover consequential damages if they are the direct, immediate, and probable result of the breach of an implied warranty. *Irmscher*, 909 N.E.2d at 1050-51 (citing *Bob Anderson Pontiac, Inc. v. Davidson*, 293 N.E.2d 232, 236 (Ind. Ct. App. 1973)). "The issue of whether claimed consequential damages are the foreseeable and proximate result of a breach of an implied warranty is generally determined by the trier of fact." *Id.* at 1051. Here, the trier of fact may determine whether Chesaco's claimed lost profits in the amount of $200,235 are the foreseeable and proximate result of the alleged breach of warranty.

CONCLUSION

For the aforementioned reasons, the motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as to Counts 1, 2, 4-8, 10-14, 16-20, 22-26, 28-32, 34-38, 40-44, 46-50, 52-56, 58-62, 64-68, 70-74, 76-80, 82-86, 88-92, 94-98, 100-102, as Chesaco has stipulated that summary judgment is proper on these counts, and the Clerk is **ORDERED** to **DISMISS THESE**

14

**COUNTS WITH PREJUDICE**.  The motion is **DENIED** as to Counts 3, 9, 15, 21, 27, 33, 39, 45, 51, 57, 63, 69, 75, 81, 87, 93, and 99, and the case **REMAINS PENDING** on these counts.



**DATED: March 26, 2013**               /s/ RUDY LOZANO, Judge
                                        **United States District Court**